**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**MEKESHIA HAYES**                                                                              **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO.: 2:20-cv-00118-TBM-MTP**

**JONES COUNTY, MISSISSIPPI;
JONES COUNTY SHERIFF'S DEPARTMENT
OFFICER JAKE DRISKELL; and
DOE OFFICERS 1-6**                                                                      **DEFENDANTS**

**OFFICER JAKE DRISKELL'S REPLY TO
PLAINTIFF'S RESPONSE IN OPPOSITION TO HIS MOTION FOR
<u>JUDGMENT ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY</u>**

Comes now, Officer Jake Driskell, by and through counsel, and, pursuant to Rule

12(c) of the Federal Rules of Civil Procedure and Local Uniform Rule 16, submits his

Reply to Plaintiff's Response in Opposition to his Motion for Judgment on the Pleadings

based on Qualified Immunity, as follows:

**INTRODUCTION**

Plaintiff's Complaint alleges that on February 13, 2020, "at or around 8:00 p.m."

she noticed "blue lights outside of her home," and "went to the door." *Compl.* ¶ 10. She

then alleges that "before she could open the door" Jones County Sheriff's Department

("JCSD") deputies, including Officer Jake Driskell, entered her home without a warrant.

*Compl.* ¶¶ 10-14. Nevertheless, there was a valid search warrant in place against

"Desmond Hicks and **other Occupants Unknown**" who may be at 1350 Ellisville Blvd.,

Lot F, Laurel, Mississippi. *See, Warrant/Affidavit (CM/ECF Doc. No. 13-1)*. Notably, "any

lawful officer of Jones County, Mississippi," had authority to carry out the search

warrant. *Id*. Plaintiff also alleges that JCSD arrested her without probable cause. *Compl*. ¶ 17. On these allegations, Plaintiff set forth eleven claims for relief in her Complaint.

Within these eleven claims for relief, Plaintiff only specifically alleged the following against Officer Driskell: "Defendants Jake Driskell and Officers 1-2 unlawfully searched Plaintiff's home, threatened Plaintiff with calling Child Protective Services, and arresting Plaintiff with no probable cause." *Id*. ¶ 64. The remainder of Plaintiff's various claims generically lump all "defendants" together without alleging how each individual defendant was personally involved or how they directly participated.

In light of Plaintiff's deficient pleading, Officer Driskell, on February 5, 2021, filed his Motion for Judgment on the Pleadings based on Qualified Immunity [13]. Plaintiff thereafter filed her Response in Opposition [18, 19] on March 5, 2021. The following reiterates Officer Driskell's grounds for qualified immunity while addressing Plaintiff's arguments from her Response.

### STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure is a proper vehicle for relief here inasmuch as a responsive pleading has already been filed. *See, Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Robertson v. Mullins*, 2:12-CV-57-MPM-DAS, 2013 WL 1319759, at *1 (N.D. Miss. Mar. 26, 2013)(same). Plaintiff argues that the pleadings in this matter are not closed; this is false. *Resp. Mem*. at 5 (¶ 1). A Motion for Judgment on the Pleadings ("MJP") is proper after a complaint, answer, and a reply to an answer (if ordered under Fed. R. Civ. P. 7(a)(7)) are before the Court. *Judd v. Mississippi*, No. 4:16-CV-119-DMB-JMV at *3 (N.D. Miss. 2018); *see also Jones*, 188 F.3d at 324. Plaintiff's argument, therefore,

that a 12(c) MJP is procedurally improper is meritless and this Court should not deny Officer Driskell's pending MJP on procedural grounds.

With Rule 12(c) firmly in place, to survive the instant Motion, Plaintiff's Complaint must contain well-pleaded factual "content that allows the court to draw the reasonable inference that [Officer Driskell] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To do so, "'plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.'" *Benjamin v. Lakeview Loan Servicing*, No. 1:20-cv-00001-GHD-RP at *3 (N.D. Miss. Nov. 17, 2020)(quoting *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013)). Plainly, in accordance with Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must "**show**" the court it is entitled to relief. *Iqbal*, 556 U.S. at 679 (emphasis added).

A plaintiff's showing must contain more than an inference of the mere possibility of misconduct. *Id*. To be sure, a plaintiff must allege facts that "raise a right to relief above the speculative level" and that "state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012)(quoting *Twombly*, U.S. 550 at 555, 570). A court, therefore, should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678, 679. "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Benjamin*, No. 1:20-cv-00001-GHD-RP at *3 (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). In fact, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, U.S. 550 at 556).

Dismissal, therefore, is appropriate when the plaintiff's facts, as is the case here, are conclusory and speculative, showing only inferences of the mere possibility of misconduct behind the mask of legal conclusions. This truth is compounded when a plaintiff who has an opportunity to respond to a MJP that raised the defense of qualified immunity fails to "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm alleged and that defeat a qualified immunity defense with equal specificity." *Judd*, No. 4:16-CV-119-DMB-JMV at *3 (quoting *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017)).

## LEGAL ARGUMENT

I.   **THIS COURT MUST DISMISS ALL OF PLAINTIFF'S CLAIMS AGAINST OFFICER DRISKELL THAT LACK ALLEGATIONS OF HIS DIRECT PERSONAL INVOLVEMENT OR PARTICIPATION**

Without allegations of personal involvement or direct personal participation by Officer Driskell, Plaintiff cannot succeed on civil rights claims against him as personal participation is required for individual liability to attach. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Borden v. Jackson County*, 2012 U.S. Dist. LEXIS 134400 (S.D. Miss. Aug. 24, 2012)(holding that a plaintiff must demonstrate personal participation in alleged unconstitutional conduct). As stated above and in Movant's brief-in-chief, Plaintiff only specifically alleged the following against Officer Driskell: "Defendants Jake Driskell and Officers 1-2 unlawfully searched Plaintiff's home, threatened Plaintiff with calling Child Protective Services, and arresting Plaintiff with no probable cause." *Id*. ¶ 64.

4

Plaintiff attempts to connect Officer Driskell to more specific acts within her Response, but she failed to plead specific facts that would allow this Court to reasonably infer Officer Driskell is liable for the harm alleged. Instead, Plaintiff alleges that Officer Driskell led the investigation and ensuing search and attributes her claims against him by what appears to be the virtue of his alleged supervisory role. To the extent Plaintiff is attempting to attach supervisory liability to Officer Driskell, the same fails.

*Iqbal* seems to foreclose supervisory liability altogether. *See*, *Brown v. Davis*, No. 6:19CV332, 2019 WL 7881607, at *4 (E.D. Tex. Nov. 26, 2019).  While the Fifth Circuit has yet to rule on the doctrine post-*Iqbal*, that case appears to foreclose the doctrine by stating that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Jackson v. Chavez*, No. A-11-CA-417-LY, 2013 WL 3328683, at *10 (W.D. Tex. June 26, 2013)(citing, *Iqbal*, 129 S.Ct. at 1948–49). To the extent that the doctrine of supervisory liability remains viable, Plaintiff's Complaint and Response still fail, as under Section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

"To establish Section 1983 liability against [Officer Driskell], Plaintiff must show that: (1) [Officer Driskell] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id.*; *see also Farmer v. Brennan,* 511 U.S. 825 (1994). Significantly, the misconduct of a subordinate must be conclusively linked to the action

or inaction of the supervisor, and the deliberate indifference standard is a "stringent" one, requiring that "the supervisory actor disregarded a known consequence of his action." *Brown v. Wilkinson Cty. Sheriff's Dep't*, 2017 WL 1479428, at *6–7 (S.D. Miss. Apr. 24, 2017); *citing*, *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169-70 (5th Cir. 2010).

To establish deliberate indifference, a plaintiff usually must demonstrate a "pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* (*citing*, *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009)). Plaintiff has failed to show that Officer Driskell (1) had supervisory authority over every officer allegedly present on the day of Plaintiff's arrest; (2) failed to supervise other officers to the point that the failed supervision resulted in a violation of Plaintiff's constitutional rights; (3) was in any way specifically deliberately indifferent to Plaintiff's constitutional rights; (4) disregarded any known consequence(s) of his action(s); or (5) carried out any other specific actions of misconduct that resulted in a violation of Plaintiff's constitutional rights.

Plaintiff has simply not provided substantive factual allegations showing that Officer Driskell personally participated in unconstitutional acts and omissions. Absent this showing, this Court must either dismiss Plaintiff's action against Officer Driskell for failure to state a claim upon which relief may be granted or allow Officer Driskell to retain his qualified immunity as Plaintiff has not shown facts that would justify this Court's removal of that protection. Related to the missing factual allegations, Plaintiff alleges that she would benefit from discovery in order to parse out which officer(s) took which action(s). *Resp. Mem.* at 10 (¶ 5). Significantly, a Rule 8 pleading "does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678, 679. Furthermore, allowing discovery to proceed for Plaintiff to gain facts beyond her pleadings "is immediately appealable as a denial of the true measure of protection of qualified immunity." *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 995 n. 16 (5th Cir. 1995).

## II.   PLAINTIFF'S COMPLAINT AND RESPONSE HAVE NOT SHOWN FACTUAL ALLEGATIONS THAT WOULD JUSTIFY REMOVAL OF OFFICER DRISKELL'S QUALIFIED IMMUNITY

Plaintiff, in both her Complaint and Response, has failed to show that Officer Driskell violated her clearly established constitutional rights. Officer Driskell, therefore, should retain his immunity. As shown in Movant's brief-in-chief, when an officer raises the qualified immunity defense, a complaint "**must present more than bald allegations and conclusory statements**." *Wicks*, 41 F.3d at 995 (emphasis added). And, a plaintiff must "allege with sufficient particularity **all facts** establishing a right to recovery, including facts which negate the official's immunity defense." *Id.* (emphasis added). Plaintiff has failed to allege facts focusing specifically on any of Officer Driskell's conduct that would amount to an injury-causing constitutional violation. *See, Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)

### A.   The Statement of Facts Section in both Plaintiff's Complaint and Response fail to Allege Specific Conduct by Officer Driskell

#### 1.   Complaint

The Statement of Facts in Plaintiff's Complaint, which in many ways can serve as a pleading's roadmap, cites information related to her claims for (1) the warrantless

search; (2) the arrest of Mekeshia Hayes; (3) Plaintiff's detention February 13, 2020, through February 15, 2020; (4) property damage; and (5) defamation. Throughout her recitation of the events giving rise to her arrest, Plaintiff only mentions Officer Driskell by name once.

In paragraph 12 of her Complaint, Plaintiff alleges that "[m]ultiple deputies, including Officer Jake Driskell, entered Ms. Hayes' home . . . ." *Compl*. at 4 (¶ 12). This is the extent of Plaintiff's specific claim against Officer Driskell within the Statement of Facts in Plaintiff's Complaint. Since there was a valid search warrant in place, Officer Driskell had authority to be in Plaintiff's home. As a result, there is no constitutional violation here related to Officer Driskell's alleged entry.

### 2.   Response in Opposition

The Statement of Facts in Plaintiff's Response in Opposition to Officer Driskell's MJP completely fails to mention Officer Driskell. Plaintiff, therefore, failed to allege any constitutional violation against Officer Driskell within this section. Plaintiff's Introduction section does, however, mention that Officer Driskell unlawfully led seven officers into Plaintiff's home. Even so, with the search warrant in place, Officer Driskell's alleged entry did not violate any of Plaintiff's constitutional rights.

### B.   First Claim for Relief: Deprivation of Federal Rights under 42 U.S.C. § 1983

This section does not include any factual allegations whatsoever and must be summarily dismissed. This claim is a textbook example of "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit

the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678, 679.

Plaintiff refers to "[a]ll of the relevant acts" or "these acts" of the Defendants without describing or detailing what those acts allegedly were. *Compl*. at 5, 6 (¶¶ 23-29). Plaintiff then lists alleged violations of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights, though she does not state how those rights were violated, who violated those rights, or how, nor does she attribute the alleged violation(s) of these rights to her arrest or incarceration. Specific to the instant Motion, Plaintiff did not allege any specific facts related to Officer Driskell's actions with respect to these claims or injuries. Accordingly, this Court must acknowledge Officer Driskell's qualified immunity with respect to Plaintiff's First Claim for Relief and dismiss these claims against him.

C.    **Second Claim for Relief: False Arrest under 42 U.S.C. § 1983**

Like her First Claim, Plaintiff's Second Claim for Relief proceeds on generalized action(s) allegedly taken by the collective "Defendants." Plaintiff's Second Claim never mentions Officer Driskell by name. To this end, there is simply not enough "content that allows [this Court] to draw the reasonable inference that [Officer Driskell] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this claim, for example, Plaintiff writes that "[d]efendants acted with malice, and/or deliberate violence or oppression, and/or in willful disregard for the rights and safety of Plaintiff, and/or in reckless disregard for the rights and safety of Plaintiff." *Compl*. at 7 (¶ 32). Here too, these conclusory allegations are threadbare recitations of actions' elements without facts, which is not enough to attach liability to Officer Driskell.

In looking at the misconduct alleged by Plaintiff within this claim, namely that "Defendants" maliciously arrested her without probable cause, she does not specifically attribute the misconduct to Officer Driskell. *Compl.* at 6, 7 (¶¶ 30-33). When addressing this claim within her Response, Plaintiff writes that the "defendants involved in the investigation led by Defendant Driskell violated that right (referring to Fourth, Fifth, and Fourteenth Amendment rights) when they arrested, handcuffed, and detained Mekeshia at the Jones County Detention Center despite not finding any drugs inside the home. There was no probable cause for her arrest." *Resp. Mem.* at 5, 6 (¶ 2). Plaintiff's allegations do not specifically focus on Officer Driskell's conduct as it may have pertained to her arrest. As such, she has not shown that Officer Driskell violated any of her constitutional rights; he should retain his qualified immunity as a result.

To the extent this Court considers that Plaintiff has sufficiently alleged a false arrest claim against Officer Driskell, probable cause existed for Plaintiff's arrest. "Probable cause to arrest exists when, at the time of arrest, the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a police officer of reasonable caution to believe an offense has been or is being committed." *Carr v. Hoover*, No. 4:16-cv-88-MPM-DAS at *5, 6 (N.D. Miss. Apr. 13, 2018); *see also Deville v. Marcantel,* 567 F.3d 156, 164 (5th Cir. 2009). Notably, "'[i]f there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.'" *Deville*, 567 F.3d at 164 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995)). Furthermore, with respect to Officer Driskell's qualified immunity, "'the plaintiff must show that the officers could not have reasonably believed that they had probable cause

10

to arrest the plaintiff for any crime.'" *Pardue v. Jackson Cnty.*, No. 1:14-cv-290-KS-MTP at *4 (S.D. Miss. May 25, 2016)(quoting *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009)).

Here, Plaintiff alleges that she was arrested in her home at 1350 Ellisville Boulevard, Lot F, in Laurel, Mississippi, on February 13, 2020, for the charge of possession of methamphetamine with the intent to distribute. *Compl.* at 3, 4. As stated in her Complaint, Plaintiff shares this home with Desmond Hicks. *Id.* at 4 (¶ 14). Movant's brief-in-chief provided the underlying search warrant for 1350 Ellisville Boulevard, Lot F, in Laurel, Mississippi, which was made out against "Desmond Hicks **and Other Occupants Unknown**."[1] (emphasis added).

Plaintiff's chief argument against the alleged lack of probable cause is not the substance of the underlying search warrant but that (1) the warrant did not specifically name Plaintiff; and (2) officers did not find any drugs during the search. This is not enough to show that the arresting officers, whomever they may be, could not have reasonably believed that Plaintiff was connected with the suspected drug operation they were investigating. Considering the totality of the circumstances here, there was a fair probability[2] that Plaintiff was involved with the criminal activity that investigators

---

[1] The search warrant here, which was issued by a neutral magistrate, established probable cause for the search of Plaintiff's home. *See, Pardue v. Jackson Cnty.*, No. 1:14-cv-290-KS-MTP at *4 (S.D. Miss. May 25, 2016). The presence of this warrant evidences that Plaintiff's Fourth Amendment right to be free from unreasonable searches was not violated. *Id.* at *11 (citing *Michigan v. Summers*, 452 U.S. 692, 703 (1981). Significantly, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705.

[2] In her Response, Plaintiff alleges that "fair probability is not the standard. Probable cause is the standard." Probability shows that something may be probable. Plaintiff's argument on this point,

suspected was taking place at Plaintiff's home. *Beeding v. Hinds Cnty.*, No. 3:10-cv-713-DPJ-FKB at *5, 6 (S.D. Miss. 2013)(quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)); *see also Reed v. Municipality of Taylorsville*, No. 3:17-cv-710-TSL-LRA at *13 (S.D. Miss. June 15, 2020)(quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004)).

In *Reed*, a homeowner consented to a search of her home even though she was not at the home, but was rather at work. No. 3:17-cv-710-TSL-LRA at *3. As the officers searched Reed's home, they discovered marijuana and methamphetamine. *Id*. at *4. Reed was later arrested on possession charges related to these drugs. *Id*. Aggrieved, she filed a 42 U.S.C. § 1983 action for "false arrest, false imprisonment, unlawful search and seizure, malicious prosecution, conspiracy, and reckless investigation, all allegedly in violation of her rights under the Fourth and Fourteenth Amendments of the United States Constitution." *Id*. at *1. The individual *Reed* defendants asserted the defense of qualified immunity, which this Court granted. This Court reasoned in *Reed* that through the doctrine of constructive possession, the arresting officers could have reasonably concluded that the drugs found in Reed's home belonged to her. *Id*. at *15, 16.

*Reed* reiterated the Mississippi Supreme Court's premise that "there is a rebuttable presumption that 'one who is the owner in possession of the premises . . . in which contraband is kept . . . is in constructive possession of the articles found in or on the property possessed.'" *Id*. at *14 (quoting *Dixon v. State*, 953 So.2d 1108, 1113 (Miss. 2007)). While it is not clear at this time who owns the home where the arrest took place, Plaintiff's

therefore, is a non-starter. *See*, *e.g.*, *United States v. Nunez-Sanchez*, 478 F.3d 663, 666-667 (5th Cir. 2007); *Haggerty*, 391 F.3d at 656; *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

pleadings declare that it is her home. As such, she may be found to have dominion and control over her own residence, which is a sufficient basis for a jury's inference of constructive possession. *U.S. v. Smith*, 591 F.2d 1105, 1107 (5th Cir. 1979).

While Plaintiff alleges no drugs were found in the home during the search, the underlying facts supporting the warrant—that on the date of the arrest, officers, who were aware that the residence was involved with some level of Schedule II drug distribution via a confidential informant ("C.I."), noticed several cars pulling up to the residence and shortly leaving thereafter in a manner consistent with drug distribution—show that there is a fair probability that Plaintiff was involved with criminal activity. Even though Plaintiff alleges no drugs were found during the arrest to which Plaintiff could constructively possess, *Reed*'s analysis still extends to the facts currently before the Court, particularly with respect to qualified immunity. Arresting officers could have reasonably concluded that by virtue of Plaintiff's connection to the residence, she could have constructively possessed any drugs that were within, or moved out of, her home, whether she was there or not. This, therefore, established sufficient probable cause to arrest Plaintiff for possession of a controlled substance with intent to distribute. Accordingly, Officer Driskell should retain qualified immunity for this claim.

The fact that Plaintiff's charges were subsequently dropped is irrelevant to her false arrest claim. It is well-established that "probable cause may exist even in the absence of a conviction on criminal charges. *Terry v. City of New Orleans*, 523 F. Supp. 2d 486, 495 (E.D. La. 2007). Importantly, "'[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'" *Reed*, No.

3:17-cv-710-TSL-LRA at *13 (quoting *Westfall v. Luna*, 903 F.3d 534, 542-43 (5ᵗʰ Cir. 2018));

*see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Based on the arguable basis for probable

cause here, even if mistaken, Officer Driskell cannot outright lose his qualified immunity

with respect to this claim. *Haggerty*, 391 F.3d at 655.

**D.     Third Claim for Relief: Excessive Force under 42 U.S.C. § 1983**

Plaintiff's Complaint dedicates three (3) paragraphs to this claim, none of which

allege any facts as to how any excessive force was used against her, when it was used, or

who used it. *Compl.* at 7 (¶¶ 34-36). Notably, Officer Driskell's name is absent from this

claim as Plaintiff only recites elements against the generalized "Defendants." Officer

Driskell, therefore, should retain qualified immunity on this claim.

Plaintiff's only scant reference in her Response that might be construed as related

to an excessive force claim is that officers "took her in handcuffs to the Jones County

Detention Center." *Resp. Mem.* at 6 (¶ 2). Plaintiff's Complaint and Response are devoid

of any allegations of measurable physical injuries that are beyond *de minimis*, which

suggests that the arresting officer's conduct, whomever he may be, was not objectively

unreasonable. *Brooks v. City of W. Point*, 18 F.Supp. 3d 790, 798 (N.D. Miss. 2014). Also,

"minor, incidental injuries that occur in connection with the use of handcuffs to effectuate

an arrest do not give rise to a constitutional claim for excessive force." *Id.* (quoting

*Freeman v. Gore*, 483 F.3d 404, 417 (5ᵗʰ Cir.2007)).

This Court should allow Officer Driskell to retain his qualified immunity related

to Plaintiff's excessive force claim as it fails to (1) show how Officer Driskell was

personally involved in the alleged excessive use of force; (2) show how Officer Driskell's

conduct was in any way objectively unreasonable; or (3) set forth sufficient facts showing that there was any injury beyond *de minimis* handcuff-related injuries.

**E.    Fourth Claim for Relief: Unreasonable Search and Seizure under 42 U.S.C. § 1983**

This claim, in many respects, is largely duplicative of Plaintiff's Second Claim for Relief. Accordingly, Movant incorporates by reference all arguments therein above and reiterates them herein as applying to this claim, particularly with respect to any and all probable cause arguments. Movant further highlights that, like most of Plaintiff's claims, this claim fails to allege any specific factual allegations, particularly against Officer Driskell, and contains nothing more than a threadbare recitation of elements. As such, Officer Driskell should retain his qualified immunity.

To the extent Plaintiff's Response raises any factual information regarding this claim, there is no constitutional violation here. As shown above, the search warrant carried with it the authority to enter Plaintiff's home and to detain her while a search was conducted. *Summers*, 452 U.S. at 703, 705.  Plaintiff's Response alleges that her Fourth Amendment right was violated when the "investigation and search led by the Defendant Driskell" failed to "knock and announce before breaking into the home." *Resp. Mem*. at 5 (¶ 2).

Plaintiff further alleges that though Officer Driskell requested a no-knock warrant, he was not granted one but the officers executing the warrant entered without knocking anyway; on these points, Plaintiff (1) has not shown any proof that a no-knock warrant

was per se not granted[3]; and (2) did not allege within her Complaint that the officers entered without knocking. Plaintiff's Complaint and Response, however, do mention a fact that diminishes Plaintiff's unreasonable search and seizure claim, that is she "noticed blue lights outside her home" before making her way to the door. *Compl.* at 3 (¶ 10); *Resp. Mem.* at 2 (¶ 1). Plaintiff, therefore, was on notice that officers were present outside her home.

Since the Fourth Amendment protects people from **unreasonable** searches and seizures, reviews of alleged Fourth Amendment violations turn on reasonableness inquiries. *U.S. v. Jones*, 133 F.3d 358, 361 (5th Cir. 1998)(emphasis added). Yet, as this Court knows, there is no bright-line standard for all cases and the Fourth Amendment's "reasonableness requirement is 'flexible' and does not ignore valid 'law enforcement interests.'" *Id.* (quoting *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)). "The Fourth Amendment questions only whether the officers' overall actions were reasonable, not how much time officers must wait to infer a constructive refusal of admittance. *U.S. v. Pinson*, 321 F.3d 558, 568 (6th Cir. 2003)(citing *Jones*, 133 F.3d at 361)).

By her own admission regarding the blue lights outside of her home, the officers executing the search warrant reasonably announced their presence. And, as the search

---

[3] The warrant in question has two options under the issuing judge's signature: (a) No-Knock Warrant Granted; and (b) Not Granted. Here, the issuing judge did not check either box. In absence of the direct prohibition stating that the no-knock request was denied, this Court should construe Justice Court Judge David Lyons' warrant as granting the no-knock authority as written. Furthermore, the warrant indicates and significantly contemplates the reasoning behind the request, namely the potential destruction of evidence, officer safety, and information that weapons were on site.

warrant indicates, this was a search where investigators suspected the presence of drugs and weapons at Plaintiff's home based on information received from credible informants. *CM/ECF Doc. No. 13-1*.[4]

"In drug cases, where drug traffickers may so easily and quickly destroy the evidence of their illegal enterprise by simply flushing it down the drain, 15 to 20 seconds is certainly long enough for officers to wait before assuming the worst and making a forced entry." *Jones*, 133 F.3d at 362 (citing *United States v. Moore*, 956 F.2d 843, 850 (8th Cir.1992) ("It is reasonable for police officers to assume that suspects selling illegal drugs in small quantities from a residence that has normal plumbing facilities will attempt to destroy those drugs....")).

Likewise, when an officer has specific information that a drug dealer may be armed, a reasonable suspicion of danger exists that will serve to justify a no-knock entry based on reasonable safety concerns. *Bishop v. Arcuri*, 674 F.3d 456, 464-465 (5th Cir. 2012) (citing *United States v. Washington*, 340 F.3d 222, 224, 227 (5th Cir.2003)). "'[R]easonable suspicion of danger' is a lower threshold than 'particularized knowledge' that a suspect possesses a weapon, [and] an officer must be able to point to specific facts to explain his safety concerns but need not demonstrate that he specifically knew a certain suspect was armed." *Id*. at 466.

Here, therefore, based on the particular circumstances before the officers executing the search warrant, provided that they did in fact enter without knocking, a no-knock

---

[4] These allegations dispute Plaintiff's reliance on *U.S. v. Cantu*, 230 F.3d 148, 151 (5th Cir. 2000) for the premise that no justification(s) existed for a no-knock entry.

entry is justified as further announcing their presence would have been dangerous, futile, or would otherwise affect "the effective investigation of the crime by, for example, allowing the destruction of evidence." *Trent v. Wade*, 776 F.3d 368, 378 (5th Cir. 2015). Notably, too, this Court may consider knocking and announcing in this case as futile based on Plaintiff's prior awareness of the officer's presence. *Id.* (citing *United States v. Peterson*, 353 F.3d 1045, 1049 (9th Cir. 2003)(a resident's awareness of officers' presence justifies a no-knock entry as additional announcement would be futile or a meaningless act)).

Accordingly, since there is no constitutional violation here, to the extent this Court finds Plaintiff successfully alleged an unreasonable search and seizure claim against Officer Driskell, he is entitled to qualified immunity regarding the same, particularly since the officers' execution of the search warrant was reasonable under the circumstances. *Bishop*, 674 F.3d at 460.

F.      **Fifth Claim for Relief: Malicious Abuse of Process under 42 U.S.C. § 1983**

This claim, too, fails to allege any specific factual allegations, particularly against Officer Driskell, and contains nothing more than a threadbare recitation of elements. Accordingly, Officer Driskell is entitled to qualified immunity on this claim. Furthermore, any of Plaintiff's facts which this Court might apply to this claim fail "to rise to the level of a constitutional wrong remedied by Sec. 1983." *Whatley v. Philo*, 817 F.2d 19, 22 (5th Cir. 1987)(quoting *Beker Phosphate Co. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir.1978)).

The Fifth Circuit has recognized that "a section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Aly v. City of Lake Jackson*, No. 11-40160 at *4 (5th Cir. Dec. 12, 2011)(quoting *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989)). *Beker* requires egregious abuse of process violations that enter the constitutional dimension. Plaintiff's alleged facts, especially in light of the arguments above and in Movant's brief-in-chief, do not show an infringement on her constitutionally protected interests, nor does she specifically allege which process was abused or which purpose(s) it was used for other than those intended by law.

If anything, Plaintiff's bare allegations related to this claim amount to alleged torts against state officials, which are not actionable under § 1983. *Whatley*, 817 F.2d at 22 (citing *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981), cert. denied, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982)). As a result, this Court should outright dismiss this claim. To the extent the Court does not so dismiss, Officer Driskell's qualified immunity should apply to the same.

### G.    Sixth Claim for Relief: Denial of Constitutional Right to know the Nature of the Charges against Her under 42 U.S.C. § 1983

This claim is not applicable to Officer Driskell as it (1) contemplates Plaintiff's incarceration and judicial process following an arrest; (2) does not specifically allege how Officer Driskell denied Plaintiff's rights; and (3) barely contains any facts beyond mere threadbare recitations of elements. Plaintiff appears to attribute this claim to Officer Driskell via supervisory liability, but, as discussed above in Section I, Officer Driskell is

only liable for his own misconduct. Officer Driskell, therefore, is entitled to qualified immunity for the allegations related to this claim.

**H.      Seventh Claim for Relief: Municipal Liability under 42 U.S.C. § 1983**

This claim is not applicable to Officer Driskell as (1) it contemplates municipal liability; and (2) Plaintiff has neither alleged nor shown that Officer Driskell is a policy-maker. To the extent this Court finds this claim does apply to Officer Driskell, he retains qualified immunity.

**I.      Plaintiff's Collective State Law Claims**

Plaintiff's negligence claims (Eighth and Ninth), along with her "Remaining State Law Tort Claims" are not part of the instant motion for qualified immunity as they pertain to state, not federal, law.[5] If this Court were to construe Plaintiff's gross negligence claims under § 1983, the same are barred as "gross negligence is insufficient to establish a constitutional claim. *Cruse v. Brisolara*, No. 1:15-cv-172-RHW at *9 (S.D. Miss. 2016)(quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)).

**J.      Tenth Claim for Relief: Civil Conspiracy**

Plaintiff's blanket allegation that officers conspired to arrest her without probable cause is not actionable, particularly with respect to Officer Driskell. "'Plaintiffs who assert

---

[5] None of Plaintiff's titled claims for relief mention defamation. To the extent this Court finds Plaintiff has made out a viable defamation claim, the same should be construed as a state law claim. If it survives as a federal claim, it would nonetheless fail with respect to falsity. *Black Farmers & Agriculturists Ass'n, Inc. v. Hood*, No. 3:13-cv-763-TSL-JMR at *31 n. 5 (S.D. Miss. Mar. 10, 2014). Since Plaintiff was arrested on the charge of possession of methamphetamine, the Laurel Leader Call contained no untrue statements. Additionally, to "state a federal § 1983 defamation-based claim, the plaintiff[] must allege and prove 'a stigma plus an infringement of some other interest,'" which she has failed to do. *Id.* (quoting *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991)).

conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient.'" *Estate of Manus v. Webster Cnty.*, No. 1:11-cv-00149-SA-DAS at *33, 34 (N.D. Miss. 2014) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)); *see also Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999)(conclusory allegations are insufficient).

Plaintiff's conspiracy claim does not allege **facts beyond a blanket accusation sufficient to show** that there was an agreement in place to commit an illegal act against Plaintiff along with which defendants agreed to commit the illegal act. *Id*. (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)). Her claim, therefore, fails. Additionally, the Fifth Circuit has consistently applied the Intra-corporate Conspiracy Doctrine to bar claims in which "all of the defendants are members of the same collective entity," as is the case here. *LaFleur vs. McClelland,* No. 4:13-cv-425, 2013 *wl* 5148181 at*3(S.D. Tex. Sep. 11, 2013; *see also Benningfield vs. City of Houston,* 157 F.3rd 369, 378 (5th Cir. 1988); *Thorton vs. Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013).

To the extent this Court allows this claim to remain, Officer Driskell is entitled to qualified immunity regarding the same as Plaintiff failed to allege sufficient factual information showing his involvement or agreement.

## CONCLUSION

Based on the authorities cited herein, as well as those arguments asserted in Movant's Motion for Judgment on the Pleadings based on Qualified Immunity, Officer Jake Driskell is entitled to dismissal of Plaintiff's federal claims against him in their entirety.

**DATE:**        **March 12, 2021.**

Respectfully submitted,

**OFFICER JAKE DRISKELL**

BY:    */s/ Lance W. Martin*
          One of His Attorneys

WILLIAM R. ALLEN (MSB #100541)
LANCE W. MARTIN (MSB#105203)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361
Fax: 601-833-6647
wallen@aabalegal.com
lmartin@aabalegal.com

## CERTIFICATE

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, one of the attorneys for

Officer Jake Driskell, hereby certify that on this day, I electronically filed the foregoing Reply

to Plaintiff's Response in Opposition to Officer Driskell's Motion for Judgment on the

Pleadings based on Qualified Immunity with the Clerk of the Court using the ECF system,

which gave notification of the same to:

Christian Medina, Esq.
DANKS MILLER & CORY
P.O. Box 1759
JACKSON, MISSISSIPPI 39215
cmedina@dmclaw.net
*Attorney for Plaintiff*

This, the 12th day of March, 2021.

*/s/ Lance W. Martin*
OF COUNSEL