**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**MEKESHIA HAYES**                                                                    **PLAINTIFF**

**v.**                                                   **CIVIL ACTION NO. 2:20-cv-118-TBM-MTP**

**JONES COUNTY, MISSISSIPPI;**
**JONES COUNTY SHERIFF'S DEPARTMENT;** *and*
**OFFICER JAKE DRISKELL**                                                       **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Mekeshia Hayes was at her home when her door was kicked open by officers from the Jones County Sheriff's Department. Officer Jake Driskell and other officers entered the home and executed a search warrant. [22], ¶ 13. After questioning Desmond Hicks—Hayes' boyfriend—about the location of alleged drugs, Hayes and Hicks were arrested for possession of methamphetamine with the intent to distribute. However, the officers discovered no drugs during the search. Hayes filed suit in this Court against Officer Driskell, the Jones County Sheriff's Department, and Jones County alleging that the Defendants violated Hayes' constitutional rights and Mississippi law.

Now before the Court is Officer Driskell's Renewed Motion for Judgment on the Pleadings [24]. For the reasons discussed fully below, Officer Driskell's Motion [24] based on qualified immunity is granted in part and denied in part.

**I. FACTUAL BACKGROUND**

This matter arises out of a February 13, 2020, search of Hayes' home in Laurel, Mississippi at approximately 8:00 p.m. and the events that followed. Officer Driskell and the Jones County Sheriff's Department had a valid search warrant that provided for the search of 1350 Ellisville Blvd.

Lot F, Laurel, Mississippi, "occupied and controlled by: Desmond Hicks and Other Occupants Unknown." [13-1].

Officer Driskell supplied the affidavit for the search warrant stating:

On the 7th day of January, 2020, Investigators of the Jones County Sheriff's Office were conducting surveillance at 1350 Ellisville Blvd. lot F on a black male named Desmond Hicks. As investigators were watching the residence when a black male later identified as Darrell Jones, left Hicks's residence in a blue Ford Mustang. Sgt Driskell and Brogan then followed Jones and conducted a traffic stop with Jones for an improper equipment violation. During this traffic stop, Driskell was able to retrieve a pipe used to smoke methamphetamine and other drug paraphernalia.

Investigators then went back to Hicks's residence to arrest him for a contempt of court warrant. Upon arrival, agents made contact with Hicks, took him into custody and searched Hicks incident to this arrest. Agents then retrieved a digital scale from Hicks's right front pocket with methamphetamine residue on it. Also, there were empty sandwich bags lying on the couch in the living room along with another set of digital scales lying in a chair in the same room which could all be seen in plain view. Through Sgt. Driskell's training and experience scales and baggies are commonly used by illegal narcotics dealers to distribute narcotics.

On the 27th day of January, 2020, Agents Driskell and Brogan met with a Confidential Informant that has proven to be creditable in the past, that stated that he could buy methamphetamine from Desmond Hicks in Laurel, MS. At that time arrangements were made to purchase meth from Hicks at his mobile home at Twin Pines Trailer Park. . . The C.I. then departed the predetermined location and went to Hicks' mobile home where Hicks sold the C.I. approximately 2 grams of a white crystal-like substance believed to be methamphetamine. . . Sgt. Driskell performed a field test on the suspected meth and the test indicated positive for methamphetamine. Also, after reviewing the video Sgt. Driskell identified the individual that sold the meth as Desmond Hicks.

On the 13th day of January 13, 2020,[1] Sgt. Driskell and Agent Brogan conducted surveillance at 1350 Ellisville Blvd. lot F being the home of Desmond Hicks. During this time, agents saw several cars pull up to the trailer, stay only minutes, and then leave. Through Sgt. Driskell's training and experience this is a common way that drugs are distributed from a residence. Also, on the same date Sgt. Driskell spoke with a C.I. who stated that he/she had spoken with Hicks and that Hicks had some meth for sale at his home at this time.

---

[1] Although the date listed in the affidavit for the search warrant is January 13, 2020, Officer Driskell contends these events took place on February 13, 2020, the day the search warrant was executed.

Due to the above facts and circumstances Sgt. Driskell is requesting a search warrant for 1350 Ellisville Blvd. lot F in Twin Pines Trailer Park Laurel, MS.

[13-1].

On the night of February 13, 2020, Hayes "noticed blue lights outside of her home" and went to the door. [22], ¶¶ 11–12. Before she could get there, "Doe Officer 1 kicked the door open" and "Officer Jake Driskell and Doe Officers 2-5 then entered [her] home." *Id.* ¶ 12. Hayes was told to "[s]hut up and sit down" by Doe Officer 1 while the officers questioned Hicks and searched for drugs. *Id.* ¶ 14. Hayes alleges that Officer Driskell told Hicks "[t]ell us where the drugs are. If you tell us we'll let her (Ms. Hayes) go. You shouldn't want her (Ms. Hayes) to go to jail." *Id.* ¶ 17.

After Hicks failed to reveal the location of the alleged drugs, Officer Driskell said "fine we'll take her to jail to piss her off and to teach her a lesson." *Id.* ¶ 21. Hayes asked Officer Driskell "multiple times why they were there" but was never shown the search warrant. *Id.* ¶ 23. Officer Driskell "ordered [Hayes] to call someone to pick up her children, and she called her aunt Tyra Blackmon." *Id.* ¶ 27. Hayes requested the reason for her arrest and "Doe Officer 2 responded that she was being arrested for conspiracy, but Officer Driskell told [Hayes] that she was being arrested for possession of methamphetamine with the intent to distribute." *Id.* ¶ 29. After her aunt arrived, Hayes was handcuffed. *Id.* ¶ 30.

Hayes alleges that "Doe Officer 1 asked, '[a]re you really going to take [Hayes] to jail?' Officer Driskell answered, '[y]es, we'll do it to piss her off.'" *Id.* ¶ 31. Hayes was taken to jail and allowed to make a phone call. However, she "was told that she would probably not see a judge until after the weekend since it was President's [D]ay weekend." *Id.* ¶ 34. She was also told "she could not be given a bond until she saw a judge." *Id.* "That same evening, the Jones County Sheriff's Department arrested [Chloe] Morgan for possession of drugs. Chloe Morgan was processed by the

Jones County Sheriff's [Department.]" *Id.* ¶ 35. "While [Hayes] waited to see if she was going to be given a bond or an initial appearance, Chloe Morgan was given a bond, and released by the Jones County Sheriff's Department within two hour[s] of being arrested." *Id.* ¶ 36.

On February 14, 2020, Hayes asked a guard "when they would set her Court or bail hearing" and was told "she was not on the list to be taken in front of a judge." *Id.* ¶ 37. Hayes did not have a bond or initial appearance hearing on February 14, 2020. However, "Desmond Hicks was given an initial appearance on February 14, 2020." *Id.* ¶ 38. The following day, Hayes was released and told that "on the orders of Officer Driskell, the charges were being dropped." *Id.* ¶ 41. Officer Driskell "never filed an affidavit or an arrest warrant to place [Hayes] in criminal proceedings." *Id.* ¶ 43.

Hayes alleges that "Officer Driskell and/or the Jones County Sheriff's Department sent [her] mugshot to *The Laurel Leader Call* along with the alleged charge of 'Possession of Methamphetamine-Warrant' knowing that this charge was false and/or fabricated." *Id.* ¶ 45.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937.

In deciding a Rule 12(c) motion, the Court accepts all well pleaded facts as true and views them in the light most favorable to the plaintiff. *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018). But "the complaint must allege more than labels and conclusions." *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "[A] formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jebaco*, 587 F.3d at 318. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

### III. DISCUSSION

Officer Driskell contends that he is entitled to qualified immunity on all federal claims against him because Hayes' Amended Complaint [24] failed to plead facts establishing a constitutional violation to overcome qualified immunity. Officer Driskell asserts that he had "arguable probable cause to arrest [Hayes] as there is a fair probability that [Hayes] was aware of, and connected to, Hicks' actions." [25], pg. 18.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S.

at 511, 105 S. Ct. 2806 (emphasis in original). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

A law enforcement officer "is entitled to claim the cloak of qualified immunity 'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'" *Pearson*, 555 U.S. at 231, 129 S. Ct. 808 (quoting *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993)). As the Supreme Court has articulated, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify," and deciding whether a violation has occurred "is an uncomfortable exercise where . . . the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed. . . ." *Pearson*, 555 U.S. at 238–39 (internal citations and quotation marks omitted). Thus, when confronted with a qualified-immunity defense at the pleadings stage, a plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

Courts use a two-step analysis to determine whether a defendant is entitled to qualified immunity. The Court must decide "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)). Courts have discretion to address either prong of the qualified immunity inquiry first. *Pearson*, 555 U.S. at 236.

To defeat qualified immunity, Hayes not only has to show that there was a constitutional violation, but that Officer Driskell's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *Pearson*, 555 U.S. at 231). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Hayes must "'identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution.'" *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)). Hayes "need not find a case 'directly on point, . . . [but] existing precedent must have placed the statutory or constitutional question beyond debate.'" *Roque*, 993 F.3d at 334 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)). "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). And clearly established law "must be 'particularized' to the facts of the case." *Roque*, 993 F.3d at 334 (quoting *White*, 580 U.S.73, 137 S. Ct. at 552 (internal citations omitted)). When there is "'an obvious case,' general standards 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)).

"[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal citations omitted). An officer's entitlement to qualified immunity depends not on his subjective beliefs but rather on "the objective question whether a reasonable

officer could have believed [the warrantless arrest] to be lawful, in light of clearly established law and the information the [] officers possessed." *Anderson*, 483 U.S. at 641, 107 S. Ct. 3034.

Hayes argues that Officer Driskell violated the Fourth Amendment's prohibition of warrantless arrests and false arrests when she was arrested without probable cause. She also contends that Officer Driskell violated the Eighth Amendment and Fourteenth Amendment. The Court will first determine whether, based on the facts alleged, Hayes has demonstrated that Officer Driskell violated her constitutional rights. If so, the Court will then determine whether the constitutional right Officer Driskell allegedly violated was clearly established as of February 13, 2020. The Court examines each alleged constitutional violation in turn, beginning first with the Fourth Amendment warrantless arrest and false arrest claim.

### A. Fourth Amendment Warrantless Arrest and False Arrest

Hayes claims that Officer Driskell violated her Fourth Amendment rights by arresting her without probable cause. Hayes contends that Officer Driskell arrested her on "a hunch" that she had committed a crime despite no evidence of drugs being discovered in the valid search of her home. [28], pg. 9.

The Fourth Amendment protects the "right of the people to be secure in their persons, *houses*, papers, and effects, against unreasonable searches and *seizures*." U.S. CONST. amend. IV (emphasis added). "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 585, 199 L. Ed. 2d 453 (2018) (citing *Payton v. New York*, 445 U.S. 573, 585, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). Under Fifth Circuit precedent, courts "[determine] whether an officer was objectively reasonable after taking into account the totality of the circumstances at the time the arrests were made."

*Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 423 (5th Cir. 2013) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). "[A] warrantless arrest supported by probable cause is constitutionally permissible." *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 348 (5th Cir. 2012) (citing *Gerstein v. Pugh*, 420 U.S. 103, 113, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). However, a law enforcement officer "may not disregard facts tending to dissipate probable cause." *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

### i. Constitutional Violation

An arrest is unlawful unless there is a warrant for the arrest or probable cause at the time of the arrest. *See, e.g.*, *Freeman*, 483 F.3d at 411. Since there was no warrant for the arrest of Hayes, the Court will determine whether Officer Driskell had probable cause to arrest her.

"[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). Probable cause exists "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). "The facts must be particularized to the arrestee." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979). "The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection." *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S Ct. 795, 157 L. Ed.

2d 769 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)).

An officer who "reasonably but *mistakenly* conclude[s] that probable cause is present [is] entitled to immunity." *Zimmerman v. Cutler*, 657 F. App'x 340, 344 (5th Cir. 2016) (emphasis in original) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004)). Put another way, "if an officer has *arguable* probable cause to arrest, he is entitled to immunity." *Gliatta v. Jones*, 96 F. App'x 249, 252 (5th Cir. 2004) (emphasis in original) (citing *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)). "Probable cause . . . is not a high bar: It requires only the 'kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014) (internal citations and quotations omitted) (quoting *Florida v. Harris*, 568 U.S. 237, 244, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013)). "The arresting officer need only know with 'fair probability' that the defendant committed the felony, which requires more than a 'bare suspicion' but less than a preponderance of evidence." *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)).

Taking the allegations as true, Hayes was arrested for possession of methamphetamine with the intent to distribute. [22], ¶ 29; [22-1]. However, Officer Driskell and officers from the Jones County Sheriff's Department did not discover any drugs at Hayes' home or on her person. Hayes has repeatedly alleged that she "did not commit any crime" and there was no probable cause for her arrest. [28], pps. 6, 7, 9, 10.

Officer Driskell alleges that Hayes was told by another officer that she was charged with conspiracy in relation to Hicks and that this "allegation does not help [her]" citing "if there was

not probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense." [25], pg. 15; *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990) (emphasis added). He believes that "[i]t is entirely reasonable . . . to arrest [Hayes] in connection with Hicks, particularly under the facts giving rise to the search warrant, as well as the framework of conspiracy." *Id*. Further he asserts he could "circumstantially infer—through [Hayes'] and Hick's intimacy in a home where [he] had, on three (3) separate, prior instances, received information that drugs and/or drug activity was connected with [Hayes'] home—that [Hayes] and Hicks were co-conspirators, and that [Hayes] was aware of, and agreed to, Hicks' suspected drug-distribution operation." [25], pps. 15–16.

Except, Hayes has sued Officer Driskell for being wrongfully arrested for possession of methamphetamine with the intent to distribute. [22], ¶ 55. Hayes included a copy of the police records section of the *Laurel Leader-Call*, a local paper, to her Amended Complaint [22] to support that she was arrested for possession of methamphetamine. [22], pg. 2; [22-1]. Officer Driskell does not dispute that no methamphetamine was discovered or that there was no warrant for Hayes' arrest.

Officer Driskell asserts that he had "arguable probable cause to arrest [Hayes] as there is a fair probability that [Hayes] was aware of, and connected to, Hicks' actions" based off the three instances used to obtain the search warrant. [25], pg. 18. The first interaction with Hayes' home occurred on January 7, 2020, where Hicks was arrested for contempt of court and officers observed in plain view "empty sandwich bags lying on the couch in the living room along with another set of digital scales" at Hayes' home. [13-1], pg. 3. Later, Officer Driskell conducted surveillance on Hayes' home and witnessed "several cars pull up to the trailer, stay only minutes, and then leave."

11

*Id*. at 4. Officer Driskell contends that "[t]hrough [his] training and experience this is a common way that drugs are distributed from a residence." *Id*. Additionally, Officer Driskell approached a confidential informant to initiate a controlled buy of methamphetamine from Hicks. *Id*. The confidential informant purchased methamphetamine from *Hicks* at Hayes' home on January 27, 2020. These three instances were used to support Officer Driskell's affidavit for the *search* warrant of Hayes' home. [13-1]. However, Officer Driskell did not obtain an arrest warrant for Hicks or Hayes. Additionally, the officers did not discover any methamphetamine during the search.

Officer Driskell argues that he had probable cause to arrest Hayes for drug activity in her home because "there was a fair probability that [Hayes] was involved with the criminal activity that investigators suspected was taking place at [her] home." [25], pps. 13–14. Yet, these facts put forth by Officer Driskell relate to Hicks, not Hayes. Accordingly, the facts were not particularized to Hayes. *Ybarra*, 444 U.S. at 91, 100 S. Ct. 338.

Officer Driskell cites *Devenpeck*, stating "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." [25], pg. 17; *Devenpeck v. Alford*, 543 U.S. 146, 153–54, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) (internal citations omitted). Officer Driskell told Hicks "[i]f you tell us [where the drugs are] we'll let her go. You shouldn't want her to go to jail." [22], ¶ 17. After Hicks declined to reveal the location of the drugs, Officer Driskell said "fine we'll take her to jail to piss her off and to teach her a lesson." *Id*. ¶ 21. When asked if he was "really going to take [Hayes] to jail," Officer Driskell answered, "[y]es, we'll do it to piss her off." *Id*. ¶ 31. Yet, he contends that Hayes' "claims related to [his] subjective statements [] are irrelevant to the Court's determination as to

12

whether or not [he] had probable cause to arrest [Hayes]." [25], pg. 17. Officer Driskell did not include Hayes' name on the search warrant for her home and potentially did not even know of her existence until the search. Officer Driskell knew at the time of the arrest that no drugs were discovered in the search. *Id.* at 14. Thus, dissipating any probable cause that he might have believed he had since no drugs were discovered in the search. *Evett*, 330 F.3d at 688.

Officer Driskell directs the Court to *Webster* in an attempt to link Hayes to Hicks' known previous criminal acts. *United States v. Webster*, 960 F.2d 1301, 1308 (5th Cir. 1992). [30], pps. 7–8. In *Webster*, the defendants were *both* known to be involved in the sale of drugs. *Webster*, 960 F.2d at 1308. The Fifth Circuit held "[t]he government need not prove the existence of the agreement by direct evidence; it may rely on circumstantial evidence." *Id.* (citing *United States v. Bankston*, 603 F.2d 528, 531 (5th Cir. 1979). However, Officer Driskell does not point to any evidence that he witnessed Hayes involved in Hicks' drug operation. The only evidence Officer Driskell provides to support his "arguable" probable cause to arrest Hayes is his observations of what he believed to be drug operations conducted in her home and a search warrant which states "Occupants Unknown" because the home at 1350 Ellisville Blvd., Lot F, belongs to Hayes. [25], pg. 13. "A police officer does not have probable cause to arrest someone merely because he sees that person talking to or in the presence of a known criminal." *United States v. Raborn*, 872 F.2d 589, 594 (5th Cir. 1989) (citing *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948); *see also Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)). There is no support

beyond mere assertions that Hayes was involved with the operation of Hicks' alleged drug operation. [2]

Under the facts on the present record, Hayes was arrested without probable cause. Officer Driskell provides no evidence that Hayes possessed methamphetamine and requests the Court infer that she was involved in the drug operation strictly because she shared a home with Hicks. [30], pg. 7. Accordingly, Hayes has sufficiently alleged a constitutional violation. Thus, because an arrest absent probable cause is unconstitutional, the Court must turn to the second prong—whether Officer Driskell's conduct was *objectively unreasonable* in light of then clearly established law—to determine if he is entitled to qualified immunity at this stage of the pleadings.

### ii. Clearly Established

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590 (citing *Reichle v. Howards*, 566 U.S. 658, 666, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). "Otherwise, the rule is not one that 'every reasonable official' would know." *Id.* (citing *Reichle*, 566 U.S. at 664, 132 S. Ct. 2088).

"In the context of a warrantless arrest, the rule must obviously resolve 'whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable

---

[2] Officer Driskell argues in the alternative that he had probable cause to arrest Hayes through constructive possession. "'[O]ne who is the owner in possession of the premises . . . in which contraband is kept . . . is in constructive possession of the articles found in or on the property possessed." [25], pg. 14; *Reed v. Municipality of Taylorsville, Mississippi*, No. 3:17-cv-710-TSL, 2020 WL 3213419, *5 (S.D. Miss. Jun. 15, 2020) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004)). However, Officer Driskell concedes that because no drugs were discovered here the facts "clearly distinguishes this matter from *Reed*." *Id.* at 15. Yet, he requests the Court to find that he had probable cause to arrest Hayes although his probable cause had been dissipated by the failure to discover drugs in the search. *See Evett*, 330 F.3d at 688. Therefore, constructive possession is not applicable since drugs were not found in the home.

cause.'" *Id.* (quoting *Mullenix*, 577 U.S. at 13, 136 S. Ct. 305 (internal quotations and citations omitted)). "In this part of the analysis, we are no longer concerned with the fact that there was no probable cause for [Hayes'] arrest. That mistake alone cannot open [Officer Driskell] to liability." *Evett*, 330 F.3d at 688. As the Supreme Court articulated, "[l]aw enforcement officers are only human, and these mistakes alone do not open officers to personal liability." *Id.* The Court "must look to the facts to determine whether a reasonably competent officer . . . could reasonably have thought his actions to be consistent with the rights he is alleged to have violated." *Id.* (citing *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997)).

Officer Driskell's arrest of Hayes will be held to be objectively reasonable "'unless *all* reasonable officials in [his] circumstances would have then known that [his] conduct violated' [Hayes'] asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (emphasis in original) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001); *Anderson*, 483 U.S. at 641; *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). "As a general matter, it is beyond question that [Hayes] has a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (holding that the plaintiff has a "clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause.") (citing *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (finding "[a]n arrest is unlawful unless it is supported by probable cause."); *see also Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (stating "[t]he Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause.")).

In *Ybarra*, the Supreme Court held "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra*, 444 U.S. at 86, 100 S. Ct. 338 (citing *Sibron*, 392 U.S. at 62–63, 88 S. Ct. 1889 ("The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's security.")). Additionally, "association with known criminals or mere presence at the scene of a crime cannot suffice for probable cause where presence or association was the only factor indicating that the defendant was involved in criminal activity." *United States v. Ashcroft*, 607 F.2d 1167, 1172 (5th Cir 1979) (citing *Sibron*, 392 U.S. 40, 88 S. Ct. 1889; *Di Re*, 332 U.S. 581, 68 S. Ct. 222). "A police officer does not have probable cause to arrest someone merely because he sees that person talking to or in the presence of a known criminal." *Raborn*, 872 F.2d at 594 (citing *Di Re*, 332 U.S. 581, 68 S. Ct. 222); *see also Sibron*, 392 U.S. 40, 88 S. Ct. 1889).

Although Officer Driskell attempts to link Hayes to Hicks' wrongdoings by their relationship with one another, Officer Driskell did not find any evidence of criminal activity on the night of the arrest but, nevertheless, carried out the arrest of Hayes. When asked about the location of drugs in her home Hayes "responded that there were no drugs in the home." [22], ¶ 20.

As the Fifth Circuit held in *Evett*, the arrest of an individual based solely off a "feeling" with limited information and his presence at a known drug house in an unhurried setting is not objectively reasonable. *Evett*, 330 F.3d 681. Evett was arrested after a task force executed a search and arrest warrant (on other individuals) at his father-in-law's home which was a known "high-traffic clandestine methamphetamine lab." *Id*. at 683–84. The search resulted in the discovery of methamphetamine and other drugs in a vehicle of another visitor at the home. *Id*. at 685. The

officers arrested Evett for possession of a controlled substance because the arresting officer believed he had ridden in the truck where drugs were discovered although Evett specifically stated he had not been in that vehicle. *Id.* Evett was released from jail the day after "for lack of probable cause." *Id.* at 685.

In determining whether Evett's arrest was objectively reasonable, the Fifth Circuit found that "[Officer] Graham had nothing further to support his 'feeling' that Evett knew about or had anything to do with the drug paraphernalia in the truck. Nevertheless, based solely on that information, [Officer] Graham arrested Evett." *Id.* at 689. The Fifth Circuit upheld the district court's finding that "a reasonable officer would have investigated further" and "learned that [Officer] Vance believed Griffin was telling the truth about Evett not having been in the truck[.]" *Id.* The Fifth Circuit articulated that "this is not a situation in which we must be concerned with second-guessing an officer's decision that was required to be made in a split second." *Id.* at 689. Instead, the arresting officer had "plenty of time" to investigate before making the arrest. *Id.* at 688. Accordingly, the Fifth Circuit found "that based on such minuscule information in an unhurried setting such as in this case, that arresting Evett was [not] objectively reasonable." *Id.* at 689.

The same can be said for the facts before the Court, because no evidence was discovered and there was no warrant for her arrest, Officer Driskell arrested Hayes based on a "hunch." [28], pg. 9. The officers searched for drugs for at least an hour according to the detailed release report attached to Officer Driskell's Motion. [24-1]. Accordingly, Officer Driskell had "plenty of time" to determine that there was no probable cause to arrest Hayes after the unsuccessful search. *Evett*, 330 F.3d at 688.

Officer Driskell asserts that "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." [25], pg. 16. Although this conclusion is true, the Fifth Circuit held in *Mendenhall v. Riser*, "a qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). After Officer Driskell and the other officers failed to discover any drugs at Hayes' home, it would be objectively unreasonable to assume that they could still arrest her. The Court cannot conclude that Officer Driskell's conduct was objectively reasonable in light of clearly established law. Therefore, Officer Driskell is not entitled to qualified immunity as to Hayes' Fourth Amendment false arrest and warrantless arrest claim at this point of the proceedings.

## B. Fourth Amendment Excessive Use of Force Claim Against Officer Driskell

Hayes claims that Officer Driskell used excessive force "to arrest [her] and take her to jail." [22], ¶ 60. Again, Officer Driskell asserts qualified immunity. To overcome Officer Driskell's qualified immunity defense, Hayes must first plead facts to support a constitutional violation. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). In an excessive force case such as this one, the qualified immunity analysis also "involves two distinct reasonableness inquiries. One is whether the officer's use of force was objectively reasonable in light of Fourth Amendment standards. The other is whether the right was clearly established such that a reasonable officer would know that the particular level of force used was excessive." *Buehler v. Dear*, 27 F. 4th 969, 981 (5th Cir. 2022) (citation and internal quotations omitted). The Court may answer these questions in either order,

18

but if both steps are satisfied, Officer Driskell is not entitled to qualified immunity at this stage of the proceedings. *Pearson*, 555 U.S. at 242.

The Fourth Amendment guarantees the right of citizens to be secure from "unreasonable" seizures, including seizures through excessive force. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). "Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, 'we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury.'" *Glenn*, 242 F.3d at 314 (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). "To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*." *Freeman*, 483 F.3d at 416 (citing *Glenn*, 242 F.3d at 314).

Hayes does not claim a physical injury. Instead, she asserts she "suffered a loss of her liberty and associated mental anguish, shame, humiliation, and emotional distress." [22], ¶ 63. Hayes alleges that "no force whatsoever was warranted or justified." *Id.* . Fifth Circuit precedent holds that the handcuffing of an arrestee without a showing of injury does not present an excessive force claim. *Templeton v. Jarmillo*, 28 F. 4th 618, 622–23 (5th Cir. 2022) (citing *Freeman*, 483 F.3d at 416–17; *Glenn*, 242 F.3d at 314; *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010)). The Court finds that the handcuffing and arresting of Hayes without more does not amount to excessive force. *Templeton*, 28 F. 4th at 622–23. Accordingly, Hayes does not put forth any case

19

law to support that Officer Driskell used excessive force in arresting her. Hayes' Fourth Amendment claim for excessive use of force fails.

## C. Eighth Amendment Claim

Hayes alleges that her civil rights were violated under the Eighth Amendment after Officer Driskell "fail[ed] to submit an affidavit of arrest or request a warrant for arrest" after she was arrested and not taken before a neutral magistrate to ensure she "would not be able to obtain a bond for her release." [22], ¶¶ 66–75. Hayes contends that she brings this claim under "the excessive bail [clause] and not the unusual punishment clause" of the Eighth Amendment. [28], pg. 11.

The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment's Excessive Fines Clause is incorporated by the Due Process Clause of the Fourteenth Amendment and therefore, applies to the states. *Timbs v. Indiana*, --- U.S. ---, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11 (2019). However, "'the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'" *Broussard v. Par. of Orleans*, 318 F.3d 644, 652 (5th Cir. 2003) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)).

"While there is no automatic right to bail after convictions, *Bowman v. United States*, 85 S. Ct. 232, 13 L. Ed. 2d 171 (1964), '[t]he command of the Eighth Amendment that Excessive bail shall not be required . . . at the very least obligates judges passing upon the right to bail to deny such relief only for the strongest of reasons.'" *Harris v. United States*, 404 U.S. 1232, 1232, 92 S. Ct. 10,

30 L. Ed. 2d 25 (1971) (quoting *Sellers v. United States*, 89 S. Ct. 36, 21 L. Ed. 2d 64 (1968) (internal quotations omitted)).

Hayes was released less than 36 hours after her arrest without being formally charged. [22], ¶ 42; [24-1]. Hayes concedes that she was not taken before a judge and was instead released without charges being filed. [22], ¶ 42. Her detention and release, within less than 36 hours, is far from a formal adjudication of guilt in accordance with due process of law. Further, Hayes acknowledges that "[t]he Eighth Amendment is implicated after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions," but argues that instead the Court should "consider Driskell's actions under the reasonableness standard that was used in *Jones*." [28], pps. 11–12.; *Jones*, 678 F.3d at 349 ("If the determination of probable cause is delayed by more than 48 hours the burden shifts to the government, and its showing of reasonableness will, virtually by definition, demand 'a bona fide emergency or other extraordinary circumstance,' which does not include 'intervening weekends' or efforts to 'consolidate [additional] pre-trial proceedings.'" (quoting *McLaughlin*, 500 U.S. at 56, 111 S. Ct. 1661))).

Hayes alleges an Eighth Amendment violation for not being taken before a neutral magistrate and for failure to have a bail hearing. [22], ¶¶ 66–75; [28], pg. 12. Instead, it would be proper for the Court to determine whether she was wrongfully denied bail under the Fourteenth Amendment.

## D. Fourteenth Amendment Claims asserted against Officer Driskell

Hayes alleges Officer Driskell violated three Fourteenth Amendment rights in her Amended Complaint [22]: failure to set a bond; failure to be given an initial appearance; and violation of the Equal Protection Clause. [22], ¶¶ 76–88. The basis for her Fourteenth Amendment

claims relies on the allegation that Officer Driskell deprived Hayes of her rights by not filing an affidavit of arrest or obtaining a warrant for her arrest. *Id.* ¶¶ 77, 81. As discussed fully above, Hayes has successfully stated a Fourth Amendment claim for false arrest and warrantless arrest to overcome Officer Driskell's Motion for Judgment on the Pleadings at this stage of the proceedings.

The Fourteenth Amendment prohibits a state from "deny[ing] [] any person within its jurisdiction the equal protection of the laws." The "Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Hilton*, 568 F.3d at 212 (citing *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993) (quotations omitted)). To maintain an equal protection claim, a plaintiff typically alleges that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id.* (citing *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)); *see In re United States*, 397 F.3d 274, 284 (5th Cir. 2005); *Beeler v. Rounsavall*, 328 F.3d 813, 816–17 (5th Cir. 2003); *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).

"By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979) (quoting *Gerstein*, 420 U.S. at 125, 95 S. Ct. 854). "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 126. 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (quoting *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), *and Davidson v. Cannon*, 474 U.S. 344, 348, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986)). "A pre-trial

detainee may bring a Fourteenth Amendment due process claim in a Section 1983 action either 'as an attack on a condition of confinement or as an episodic act or omission." *Jones*, 678 F.3d at 352 (citing *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (internal citations omitted)).

### i. Failure to set a bond and be given an initial appearance

Hayes alleges she had a constitutional right to an initial appearance or bond hearing under the Fourteenth Amendment when Officer Driskell failed to "fil[e] an affidavit of arrest or obtain[] a warrant for arrest[.]" [22], ¶ 80. Hayes states that she "has yet to find any case that speaks directly on this specific issue." [28], pg. 12. In liberally construing Hayes' arguments, the issue is whether an individual's *Fourth* Amendment right to receive prompt, judicial determination of probable cause (i.e., to be given access to a neutral judge once detained) is violated when she is not provided an initial hearing or bond hearing and is instead released after less than 36 hours. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991).

The Supreme Court held in *McLaughlin*, "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest" is considered prompt and "will be immune from systemic challenges." *McLaughlin*, 500 U.S. at 56, 111 S. Ct. 1661; *see also Powell v. Nevada*, 511 U.S. 79, 80, 114 S. Ct. 1280, 128 L. Ed. 2d 1 (1994) ("[P]rompt generally means within 48 hours of the warrantless arrest; absent extraordinary circumstances, a longer delay violates the Fourth Amendment.")).

The Fourth Amendment's promptness requirement concerns the length of detention after a warrantless arrest before a determination of probable cause. *Gerstein*, 420 U.S. at 124–25, 95 S. Ct. 854, 43 L. Ed. 2d 54; *McLaughlin*, 500 U.S. at 52, 111 S. Ct. 1661, 114 L. Ed. 2d 49; *Powell*, 511

U.S. at 80, 114 S. Ct. 1280. "The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings." *Gerstein*, 420 U.S. at 120, 95 S. Ct. 854.

Hayes requests the Court apply precedent that is not on point and pertains to facts distinct from this case. Hayes was not taken before a judge and was instead released without charges being filed. Hayes' detention and release, within less than 36 hours, does not constitute a violation of a constitutional right. Further, her failure to receive an initial hearing or bond hearing because she was released without being charged fails to allege a constitutional violation sufficient to overcome Officer Driskell's claim for qualified immunity.

### ii. Violation of the Equal Protection Clause

Hayes did not respond to Officer Driskell's Renewed Motion for Judgment on the Pleadings as to her Equal Protection Clause claim, and the Court therefore finds that she has waived it. *See Friend v. City of Greenwood, Mississippi*, No. 4:19-cv-SA, 2020 WL 2306112, at *7 (N.D. Miss. May 5, 2020) (citing *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in waiver)); *Stearman v. C.I.R.*, 436 F.3d 533, 537 (5th Cir. 2006) (finding that failure to raise arguments in response to motion to dismiss constitutes a waiver of those claims); *Morris v. City of Fort Worth*, No. 4:19-cv-638-A, 2020 WL 870228, at *3 (N.D. Tex. Feb. 21, 2020); *Lewis v. Loftin*, No. 3:17-cv-180-NBB, 2019 WL 1867937, at *9 (N.D. Miss. Apr. 25, 2019) (citations omitted). Officer Driskell's Renewed Motion for Judgment on the Pleadings as to Hayes' Fourteenth Amendment Equal Protection claim is therefore granted.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Officer Driskell's Motion for Judgment on the Pleadings [24] as to qualified immunity is GRANTED IN PART and DENIED IN PART. The Motion [24] is GRANTED as to Hayes' Fourth Amendment excessive force claim, Eighth Amendment claim, and Fourteenth Amendment claims and DENIED as to Hayes' Fourth Amendment warrantless arrest and false arrest claims.

This, the 30th day of September, 2022.

**TAYLOR B. McNEEL**
**UNITED STATES DISTRICT JUDGE**